IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-03096-PAB

JAMES K. THOMAS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER**

This matter is before the Court on plaintiff James K. Thomas' opening brief [Docket No. 12], filed on April 23, 2013. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner")[1] denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[2] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On July 6, 2005, plaintiff applied for disability benefits under Titles II and XVI of the Act. R. at 11. Plaintiff alleged that he had been disabled since July 28, 2003. *Id*. After an initial administrative denial of his claim, plaintiff appeared at a hearing before

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin, who as of Feb. 14, 2013 has been named as the Acting Commissioner, is automatically substituted for Michael J. Astrue as the defendant in this suit.

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

an Administrative Law Judge ("ALJ") on November 7, 2006. *Id*. On February 23, 2007, the ALJ issued a decision denying plaintiff's claim. *Id*. at 21.

The ALJ found that plaintiff had the following severe combination of impairments: "arthritis and systemic lupus erythematosus." R. at 15. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*., and ruled that plaintiff had the residual functional capacity ("RFC") to:

> perform an essentially full range of sedentary work. He is able to lift and/or carry up to 10 pounds occasionally and lesser weights more frequently. He can sit for 8 hours in an 8-hour workday, and he can stand and/or walk for 2 hours in an 8-hour workday, with routine breaks. The claimant should avoid repetitive bending, stooping, squatting, kneeling, or twisting.

*Id*. Based upon this RFC and the application of the Medical-Vocational Guidelines, *see* 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. at 20.

The Appeals Council denied plaintiff's request for review of this denial. R. at 3. Plaintiff appealed the ALJ's decision to this Court. R. at 344. On March 13, 2009, the Court reversed the denial of plaintiff's claim for benefits and remanded the matter to the ALJ with instructions to make "further findings . . . regarding claimant's ability to work on a sustained basis" in formulating plaintiff's RFC. R. at 335; Case No. 8-cv-00005-PAB, Transcript of Ruling [Docket No. 21] at 12, ll.3-7 (D. Colo. Apr. 15, 2009). After a hearing on October 21, 2009, the ALJ issued a decision denying plaintiff's claim on November 30, 2009. R. at 310, 320.

The ALJ found that, through his date last insured, plaintiff had the following severe impairments: "arthritis and systemic lupus erythematosus." R. at 314. The ALJ

found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id.*, and ruled that plaintiff had the residual functional capacity ("RFC") to: "perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with occasional bending, squatting, and kneeling and no over chest level work." *Id*. Based upon this RFC and the testimony of a vocational expert ("VE"), the ALJ concluded that, through plaintiff's date last insured of March 31, 2009, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." R. at 319.

The Appeals Council denied plaintiff's request for review of this denial. R. at 288. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not

substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an

>impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues, in part, that the ALJ erred at step four by failing to consider the episodic nature of plaintiff's impairments when formulating his RFC determination. Docket No. 12 at 15.

On appeal in 2009, the Court found that there was "no evidence in the record that the claimant can work a full 40-hour week" or that the "claimant could work

regularly for an entire month." R. at 328-29; Case No. 8-cv-00005-PAB, Docket No. 21 at 5, ll.23-24 and 6, ll.3-4. The Court held that, absent such evidence, plaintiff did not have the RFC to perform a sedentary job. R. at 329; Case No. 8-cv-00005-PAB, Docket No. 21 at 5, at 6, ll.5-6.

On remand, plaintiff testified at a hearing before the ALJ that he has "good days and bad days." R. at 394-95. He testified that some days, he has a little swelling in the morning, but is otherwise fine, while on other days, his hands become "completely swollen and you can't even see the fingers," he is unable to hold a pen, the left side of his body swells, and he is hardly able to get up and move around on his own. R. at 395. He testified that these episodes can continue for two or three days. *Id*. He testified that he never knows when he will have an episode of this nature. R. at 396 ("It's not like every week or it just, sometimes it's three, four days and then it's good for two, three days and depends on what medication if I'm staying on it and now this one is working but I don't know how long.").

In response to the ALJ's question, the VE testified that a hypothetical person with plaintiff's age, educational background, and RFC could perform the jobs of surveillance system monitor, call out operator, and service dispatcher. R. at 399. The ALJ then asked the VE whether these jobs would be available to an individual who had to miss work on a regular basis.[3] *Id*. The VE replied that this additional limitation would

---

[3] The transcript appears to be incomplete as it is missing the word necessary to specify the frequency of the hypothetical absences: "Assume the limitations that I gave you in the first hypothetical plus add an additional limitation of two to three days each [sic] an inability to be on task all or part of the day due to symptomatology of arthritis or lupus." R. at 399.

"eliminate[] competitive employment."  *Id*.

In his decision, the ALJ addressed the Court's March 13, 2009 Order by including a section beneath the header: "As per Court Remand the claimant's credibility is discussed below."  R. at 317-19.  In this section, the ALJ discussed the fact that (1) at the time of his alleged onset of disability in 2003, plaintiff owned a bar, which he did not sell until 2005; (2) in 2005, plaintiff opened a catering business where he still works on Tuesdays through Fridays for approximately three hours per day; (3) none of plaintiff's physicians have told him he should give up his business endeavors or stop working; (4) the records do not indicate that plaintiff has sought low-cost or emergency health services; (5) plaintiff never reported the alleged side effects of his medication to his physicians; (6) plaintiff stated that he needs to use a cane or walker, but this is not based on the advice of a physician; and (7) plaintiff regularly takes his child to school, drives, shops for groceries and household items, manages the family finances, attends church, talks with friends, reads, and participates in family outings.  R. at 317-38.  The ALJ also stated that plaintiff's "involvement in multiple business endeavors after his alleged onset of disability, does tend to suggest a strong residual capacity to engage in substantial activity."  R. at 317.  The ALJ concluded that he would "give the claimant all possible benefit of doubt" by finding that he was capable of performing sedentary work, with several non-exertional limitations.  R. at 314, 319.

"RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis in original).  A "regular and

continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. "Ability to drive an automobile, participate in some community affairs, attend school, or to do some work on an intermittent basis does not necessarily establish that a person is able to engage in a 'substantial gainful activity,' but such activities may be considered by the Secretary, along with medical testimony, in determining the right of a claimant to disability payments under the Act." *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979); *see also Kangas v. Bowen*, 823 F.2d 775, 778 (3d Cir. 1987) ("sporadic or transitory activity does not disprove disability") (citation omitted).

In *Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000), the plaintiff, who suffered from sickle cell anemia, testified that he routinely took multiple naps in one day and that he had to spend two out of every ten days in bed because of pain, but that he was able to engage in activities like vacuuming and mowing the lawn on the three or four days each week when his pain subsided. The ALJ relied on evidence of plaintiff's intermittent performance of these activities to support a finding that plaintiff could work on a daily basis. *Id*. The court found that plaintiff's ability to engage in certain activities "on his good days is not inconsistent with his testimony that on his bad days, he cannot function at all." *Id*. The court held that the "ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work." *Id*. The court concluded that the only RFC supported by the record was that plaintiff could not perform substantial gainful activity because he could not "maintain the attendance requirements of full time competitive employment" and remanded the case with

directions to award benefits. *Id*. at 850; *see also Calandro v. Bowen*, 697 F. Supp. 423, 430 (D. Wyo. 1988) (plaintiff's work as a disc jockey was not substantial gainful activity in part because it was "intermittent and lacked the reasonable regularity expected of" such activity; it was also performed in a non-standard way insofar as plaintiff had to lie down on the floor during a show to alleviate his back pain).

The ALJ did not cite or discuss evidence that plaintiff is capable of working full time on a regular basis. The evidence that the ALJ relied on in the section addressing plaintiff's credibility is evidence that was included in the first decision and that the Court found insufficient to support a finding that plaintiff can work on a full time basis. *See* Case No. 8-cv-00005-PAB, Docket No. 21; *compare* R. at 18 *with* R. at 317-18. Evidence of plaintiff's sporadic engagement in activities of daily living, including the several hours he is able to work at his catering business on some days, is consistent with his claim that he is routinely incapacitated by swelling and pain in his hands and on the left side of his body. *See Ross*, 218 F.3d at 849. Although evidence of sporadic activity is relevant to determining plaintiff's RFC, it cannot, on its own, establish his ability to perform in a competitive work environment on a "regular and continuing basis." *See* SSR 96-8P, at *2; *see also Markham*, 601 F.2d at 534; *Kangas*, 823 F.2d at 778. This conclusion finds further support in the testimony of the VE that all competitive employment options would be eliminated by adding to plaintiff's RFC the limitation of regular and unscheduled absences. *See* R. at 399.

Furthermore, the ALJ did not cite or discuss evidence contradicting plaintiff's claims of intermittent debilitating swelling. If the ALJ found that plaintiff was not credible

in testifying that he is incapacitated on a regular but unpredictable basis, the ALJ was required to specifically state this finding and to "closely and affirmatively" link it to "substantial evidence" in the record. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). However, the ALJ did not refer to, and the Court has not found, record evidence that plaintiff's testimony on this point was not credible.

The "only residual-functional-capacity assessment that is supported by the record is that [plaintiff] cannot perform any substantial gainful activity, as he cannot maintain the attendance requirements of full time competitive employment." *See Ross*, 218 F.3d at 850. Plaintiff filed his initial claim for benefits nearly nine years ago. *See* R. at 11. He has appeared in two hearings before the ALJ. In his decision following remand, the ALJ referred to the Court's March 13, 2009 Order without directly addressing the evidentiary gap that the Court identified. *See* R. at 317-19. Accordingly, an award of benefits without further adjudication is warranted. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (in deciding whether to direct an award of benefits, courts consider the length of time a case has been pending and the utility of additional fact finding); *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) ("The Secretary is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.") (citation omitted).

### III. CONCLUSION

Wherefore, it is

**ORDERED** that the November 30, 2009 decision of the Commissioner that

plaintiff was not disabled is REVERSED.  It is further

> **ORDERED** that this case is remanded for an award of benefits.

DATED April 18, 2014.

> BY THE COURT:
>
> s/Philip A. Brimmer
> PHILIP A. BRIMMER
> United States District Judge